UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

CIVIL ACTION NO. 1:05-CV-79M

ERIC DEWAYNE WELLS                                          PLAINTIFF

V.

ROBERT N. BISHOP, et al.                                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Robert Bishop's Motion for Summary Judgment [DN 26]. The Court requested further briefing on this matter in order for the Plaintiff to clarify his claims. Having considered the Plaintiff's surreply and the Defendant's response to that surreply, this matter is ripe for decision.

### I. FACTS

Plaintiff Wells filed suit against Robert Bishop in 2005, following events which occurred in June, 2004 at the Barren County Detention Center (BCDC) in Glasgow, Kentucky. In June, 2004, Wells was incarcerated at BCDC. Bishop is a deputy at BCDC. While incarcerated, Wells was awakened from sleep by three inmates who repeatedly punched and kicked Wells, causing him injury. Wells asserts that Bishop watched the attack and failed to stop it and that Bishop caused the attack by provoking the inmates to attack Wells.

1

Plaintiff Wells's former wife, Beth Wells, was a deputy at BCDC when the attack occurred.  At the time of the attack, Plaintiff Wells and Beth were still married.  Wells was incarcerated for allegedly violating a domestic violence order.  Wells alleges that Bishop told the inmates involved "to beat the hell out of" Wells.  Deposition testimony indicates that Bishop offered money to the inmates involved in exchange for injuring Wells.  Beth Wells testified that prior to the beating, Bishop told Beth that Plaintiff Wells was "getting ready to get the hell beat out of him."  Beth further testified that Bishop threatened Wells with further beatings if Wells pressed charges or filed grievances based on his attack.

Wells filed this action pursuant to 42 U.S.C. §§ 1983 and 1985 alleging a violation of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.  Wells sues Bishop both in his individual and official capacities.  Defendant Bishop moves the court for summary judgment in his favor.

## II.  DISCUSSION

In his Motion for Summary Judgment, Bishop submits that he is entitled to judgment as a matter of law on all claims against him in both his official and individual capacities. Claims against Bishop in his official capacity will be discussed first, followed by discussion of the claims against Bishop in his individual capacity.

### 1. Summary Judgment Standard

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

**2. Bishop and His Official Capacity**

A suit against a government employee in his official capacity is converted into a suit against the local government entity for which he works. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). The parties agree that Barren County may be sued only as the Barren County Fiscal Court, which is the legislative body that governs the county. See KRS § 65.410(1); KRS § 67B.020(2). The Barren County Fiscal Court cannot be held liable based on a theory

of respondeat superior. <u>Board of County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 403 (1997).

To prevail when 42 U.S.C. § 1983 claims are alleged against a government entity, as here, a plaintiff must prove not just an unconstitutional action, but must prove that an unconstitutional "policy or custom" existed. See <u>Monell v. Dept of School Services of the City of New York</u>, 436 U.S. 658 (1978). "Beyond having to identify 'conduct properly attributable to the municipality' itself, a plaintiff 'must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." <u>Cherrington v. Skeeter,</u> 344 F.3d 631, 645 (6th Cir. 2003)(quoting <u>Bryan County</u>, 520 U.S. at 404).

In his complaint, Wells levies allegations of violations of his Eighth and Fourteenth Amendment rights. Bishop argues that Wells does not identify any policy or custom, whether in training or otherwise, that deprived Bishop of his constitutional rights. Wells responds that allegations of a particular custom, policy or practice are unnecessary as long as the allegations are sufficient to demonstrate the existence of a policy, practice or custom which directly caused Plaintiff's injuries. When considering the pending motion, the Court requested further briefing asking Wells to clarify his official capacity claims against Bishop. Wells then stated that he "alleged deliberate indifference to and callous and reckless disregard for Wells' safety by employees of the Detention Center that when construed in the light most favorable to the plaintiff demonstrates a policy, practice or custom of the Detention Center that is the result of either failure to train or condonation by the municipality

4

in question."

The Court concludes that the Plaintiff's complaint sufficiently alleges facts to demonstrate a failure to train claim against Barren County. Furthermore, where a complaint is ambiguous as to particular claims, the Court applies the "'course of the proceedings'" test to determine whether defendants in a § 1983 action have received notice of the plaintiff's claims." Cummings v. City of Akron, 418 F.3d 676, 681 (6th Cir. 2005). Because the Plaintiff, during the course of proceedings in this case, has made clear an intention to pursue a failure to train claim, this Court will consider whether there are material issues of fact related to such a claim.

To prove that there was an unconstitutional failure to train at BCDC, Wells must show that the failure to train was a result of Barren County's deliberate indifference to the constitutional rights of citizens. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). The issue is first whether the training program at BCDC was adequate, and next, whether "inadequate training can justifiably be said to represent" County policy. Id. at 390.

The Court finds that there are material issues of fact remaining as to whether BCDC's training was adequate and whether that training represented county policy. There is evidence that there was a lack of proper training at the detention center as a result of Barren County's deliberate indifference to the constitutional rights of inmates. Therefore, summary judgment is not proper as to this claim.

In addition to the failure to train, Wells has alleged that the failure to respond to his grievances serves as a ratification of the allegedly unconstitutional behavior of BCDC

5

employees, showing an unconstitutional custom or policy. The Complaint states that Bishop told Wells not to file a grievance following the alleged beating, and threatened further physical harm if a grievance was filed. Wells claims that he nonetheless filed a grievance, but that no response was given. Wells asserts that he later filed a second grievance, which also received no response. A failure to respond to an alleged incident may serve as a ratification of illegal behavior, and may evidence an unconstitutional policy. Leach v. Shelby County Sheriff, 891 F.2d 1241, 1248 (6th Cir. 1989).

The Sixth Circuit was presented with facts similar to those at issue here in Marchese v. Lucas, 758 F.2d 181 (6th Cir. 1985). The Marchese plaintiff pointed a gun at a deputy officer prior to his arrest. Id. at 182. After his arrest, the plaintiff was beaten by officers as he was taken into the station house. Id. A second beating occurred that same night when the plaintiff's cell was opened by a deputy and he was beaten violently with a hard object. Id. The plaintiff brought suit under § 1983 against the sheriff and the county where he was incarcerated. Id. at 181. The defendants denied that the beatings had occurred. Id. at 184. The Sixth Circuit found:

> The Sheriff's subsequent failure to order and direct an investigation which disclosed exactly who were the perpetrators of these brutal violations to the U.S. Constitution and to administer censure and punishment served to confirm the existence of an unstated "policy" of toleration of illegal brutality toward any county prisoner who had threatened the life of a sheriff's deputy.

Marchese, 758 F.2d at 184. The Court stated that "[s]uch undisciplined conduct on the part of law enforcement officers speaks ab initio of lack of training and discipline." Id. at 188.

As to an official policy, the Court concluded that the county policy was that "where a citizen had made a life-threatening gesture by pointing a gun at a sheriff's deputy, subsequent assault by brother officers, upon a prisoner, would not engender either serious investigation to discover the perpetrators or official sanctions against their conduct." Id. The failure to investigate the beatings was regarded "as ratification of the illegal acts of the unidentified officers." Id.

Wells has submitted facts that he was beaten at the prompting of county officers, with their full knowledge of his beating. As in Marchese, Wells has submitted facts that no investigation of the incident took place. Under the standard of Marchese, the Court finds that the failure to investigate Wells' grievances may serve as a ratification of his allegedly unconstitutional beating and show that the County had an unconstitutional policy.

While Wells' claims related to a failure to respond to grievances may serve as evidence of an unconstitutional policy, the failure to respond to grievances was not itself a violation of Well's constitutional rights. There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." Walker v. Mich. Department of Corrections, 128 Fed.App. 441, 445 (6th Cir. 2005). As another court explained:

> Plaintiff's allegation that defendants' fail[ed] to respond to his grievances does not rise to the level of a violation of his constitutional rights. There is no constitutional requirement to an inmate grievance system. See Azeez v. De Robertis, 568 F.Supp. 8 (N.D.Ill.1982); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); Meadows v. Gibson, 855 F.Supp. 223, 225 (W.D.Tenn.1994). If a state prison system does provide a mechanism, violations of its provisions do not deprive prisoners of federal constitutional rights. Consequently, the failure of defendants to follow the grievance mechanism does not in itself give rise to a § 1983 claim. Doans v. Rice, 831 F.2d 1057 (4th Cir.1987).

7

Gordon v. Barrow, No. 7:05-CV-55, 2005 U.S. Dist. LEXIS 17082, at *3-4 (M.D.Ga. Jul. 21, 2005). The failure to respond to grievances may serve as evidence of an unconstitutional policy at BCDC and the claims against Bishop in his official capacity will survive summary judgment.

### 3. Qualified Immunity and Bishop in His Individual Capacity

Prison officials performing discretionary duties are shielded from civil liability where their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Bishop submits that even if a public officer has deprived Wells of a federal right, qualified immunity will exempt him from suit if an objectively reasonable official would not have understood the conduct to be unlawful. See County of Sacramento v. Lewis, 523 U.S. 833, 841, n.5 (1998). Bishop further argues that Wells has not put forth evidence that Bishop acted knowingly or intentionally to violate Wells's constitutional rights, and thus Bishop is entitled to qualified immunity. See Harlow, 457 U.S. at 815. Wells acknowledges that prison officials are immune from suit where actions do not violate clearly established standards, but submits that Bishop's actions demonstrate that he knowingly violated the clearly established rights of Wells.

"It has been widely held that the unjustified striking, beating, or infliction of bodily harm upon a prisoner by . . . a correctional officer gives rise to liability under 42 U.S.C. § 1983." King v. Blackenship, 636 F.2d 70, 72 (4th Cir. 1980). It is clear that "an unjustified beating at the hands of prison officials gives rise to a section 1983 action." Bruce v. Wade,

537 F.2d 850, 853 (5th Cir. 1976). The use of an inmate to perform a beating does not insulate a prison official from liability. See Whitley v. Albers, 475 U.S. 312, 322 (1986)(deference for prison officials "does not insulate from review actions taken in bad faith and for no legitimate purpose"). Indeed, a failure to intervene in a beating may itself create § 1983 liability "if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Smith v. Mensinger, 293 F.3d 641, 650 (3rd Cir. 2002).

Wells has alleged that Bishop provoked other inmates to beat Wells, failed to interfere with Wells's beating, and threatened Wells with further attacks. Considering the facts in the light most favorable to Wells, these facts indicate a violation of a clearly established right to be free from unprovoked beatings. Thus, Bishop cannot be entitled to qualified immunity in this case. Assuming the facts alleged by Wells to be true, the actions of Bishop were not "objectively reasonable" and thus immunity is forfeited. See Harlow, 457 U.S. at 818.

In this situation, material questions of fact remain. The Court finds that a jury could find that these facts demonstrate that Bishop violated Wells's constitutional rights. Summary judgment is inappropriate in this situation.

### III. CONCLUSION

For all the foregoing reasons, it is hereby ordered that Defendant Bishop's Motion for Summary Judgment is DENIED [DN 26].

cc: counsel of record